UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,                           :
                                                      :
              Plaintiff,                              :
                                                      :
vs.                                                   :   Case No. 2:18-cv-2164
                                                      :
THF METCALF DEVELOPMENT, L.L.C.,                      :
a Missouri limited liability company                  :
                                                      :
                                                      :
              Defendant.                              :
_____/

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, THF METCALF DEVELOPMENT, L.L.C., a Missouri limited liability company (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

2.      Defendant's property, College Metcalf Plaza, is located at 11000 Metcalf Avenue, Overland Park, Kansas 66210, in Johnson County.

3.      Venue is proper in the District of Kansas because the situs of the property lies in this judicial district.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Kansas City metropolitan area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

7.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the property which forms the basis of this lawsuit on March 30, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment auction, heavy equipment dealerships, and to the home of his uncle and cousin he visits in the Kansas City metropolitan area.

8.      Mr. Nekouee enjoys the food and beverages at Panera Bread, a chain restaurant at which he can count on the nature and quality of the menu when he travels.

9.      The Plaintiff has encountered architectural barriers at the subject property.   The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms at the College Metcalf Plaza.

10.      Defendant owns, leases, leases to, or operates a place of public accommodation as

defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA.  The place of public accommodation that the Defendant owns, operates, leases or leases to is known as College Metcalf Plaza located at 11000 Metcalf Avenue, Overland Park, Kansas 66210 ("College Metcalf Plaza").

11.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 13 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.  Fred Nekouee desires to visit the College Metcalf Plaza not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

12.    The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

13.    The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).  Preliminary inspections of the College Metcalf Plaza have shown that violations exist. The violations that Fred Nekouee personally encountered or observed on his visit to the College Metcalf Plaza include, but are not limited to:

**PARKING**

a.  In the parking lot of Mid America PolyClinic, Panera Bread, and Bank of America Home Loans, the parking spaces for disabled patrons do not have the signage and international symbol of accessibility in violation of Federal Law 2010 ADAAG §§ 502.6 and 703.7.2.1.

b.  In the parking lot in front of Panera Bread and Shack Breakfast & Lunch, there are no parking spaces for disabled patrons with van accessible signage in violation of Federal Law 2010 ADAAG §§ 208.2.4 and 502.6.

c.  In the parking lot in front of SERC Physical Therapy, there is no access aisle for the parking spaces for disabled patrons in violation of Federal Law 2010 ADAAG §§ 502.1 and 502.3.

d.  In the parking lot in front of Bank of America Home Loans, the parking space for disabled patrons has an excessively steep running slope, as steep as 1:16.4 (6.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

e.  In the parking lot for Shack Breakfast & Lunch, the parking space for disabled patrons has an excessively steep running slope, as steep as 1:16.7 (6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law ADAAG § 502.4.

f.  In the parking lot in front of Panera Bread, the parking space for disabled patrons has an excessively steep cross slope, as steep as 1:22.7 (4.4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

g.  In the parking lot for the Mid America PolyClinic, the running slope of the access

aisle serving the disabled parking spaces is 1:25.6 (3.9%), which running slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

h.  In the parking lot near Bank of America Home Loans, the running slope of the access aisle serving the disabled parking spaces is 1:14.1 (7.1%), which running slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.

i.  The cross slope of the walking surface in front of Mid America PolyClinic is 1:28.6 (3.5%), which cross slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 403.3.

j.  The running slope of the accessibility ramp in front of Shack Breakfast & Lunch is 1:9.8 (10.2%), which running slope is dangerously steeper than the allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.

k.  The running slope of the accessibility ramp near SERC Physical Therapy is 1:9.4 (10.6%), which running slope is dangerously steeper than the allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.

l.  The slope of the accessibility curb ramp sides or the curb ramp flares in front of the Mid America PolyClinic is 1:2.5 (40.7%), which slope is dangerously steeper than the allowed slope of 1:10 (10%), in violation of Federal Law 2010 ADAAG § 406.3.

m.  The slope of the accessibility curb ramp sides or the curb ramp flares in front of Shack Breakfast & Lunch is 1:1.8 (55.6%), which slope is dangerously steeper than the allowed slope of 1:10 (10%), in violation of Federal Law 2010 ADAAG § 406.3.

n.  The access aisle serving the First State Bank and Trust accessible parking spaces does not connect to an accessible route towards the ramp and the cross slope of the walking

surface is 1:16.9 (5.9%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 §§ 502.3 and 403.3.

o.    The ramp landing in front of the Mid America Polyclinic has a slope of 1:13.9 (7.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 405.7.1.

p.  The slope of the surface within the Panera Bread entrance door required maneuvering space of 60 inches is 1:31.3 (3.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%) within the door maneuvering space, in violation of Federal Law 2010 ADAAG § 404.2.4.4.

**PANERA BREAD ENTRANCE DOOR AND INTERIOR FOOD SERVICE AREA**

q.  The door force needed to open the Panera Bread door is 15 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

r.  In the entrance to Panera Bread, the door hardware (handle) requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip in violation of Federal Law 2010 ADAAG § 309.4 and 404.2.7.

s.  The soda machine dispenser in Panera Bread is 50 inches above the finished floor, which height is higher than the maximum allowed height of 48 inches when the reach depth is less than 20 inches, in violation of Federal Law 2010 ADAAG § 308.2.2.

**FEDEX ENTRANCE DOOR**

t.  In the entrance to FedEx, the door hardware (handle) requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip in

violation of Federal Law 2010 ADAAG § 309.4 and 404.2.7.

u.  The force needed to open the FedEx entry door is 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

**PANERA BREAD MEN'S RESTROOM**

v.  The force needed to open the men's restroom door in the Panera Bread is 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

w.  The men's restroom in the Panera Bread does not have the signage and international symbol of accessibility in violation of Federal Law 2010 ADAAG § 703.7.2.1.

x.  In Panera Bread, the men's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 3 inches, which clearance is less than the minimum clearance of 18 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.

y.  In Panera Bread, the rear wall grab bar in the men's restroom only extends 9.5 inches and 26.5 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.

z.  In Panera Bread, the side wall grab bar in the men's restroom only extends 49 inches from the rear wall and does not extend the minimum of 54 inches (1370 mm) minimum

from the rear wall, in violation of Federal Law 2010 ADAAG § 604.5.1.

aa.  In Panera Bread, the urinal in the men's restroom has a clear fllor space of 28 inches and less than the minimum width of 36 inches to the alcove urinal (confined on all or part of three sides where the depth exceeds 24 inches), in violation of Federal Law 2010 ADAAG §§ 305.7.1 and 305.7.2.

bb.  In Panera Bread, the toilet paper dispenser in the men's restroom is outside of the reach range of an individual in a wheelchair, which dispenser centerline is 14 inches from the front of the water closet and not between 7 inches minimum and 9 inches maximum, in violation of Federal Law 2010 ADAAG § 604.7.

cc.  In Panera Bread, the bottom edge of the mirror's reflecting surface is 48 inches above the finished floor, which height is higher than the maximum allowed height of 40 inches to permit an individual in a wheelchair to use the mirror, in violation of Federal Law 2010 ADAAG § 603.3.

dd.  In Panera Bread, the door handle to the accessible toilet compartment requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010 ADAAG §§ 309.4 and 404.2.7.

ee.  In Panera Bread, the accessible toilet compartment door pull in the men's restroom is not provided on both side of the door near the latch, in violation of Federal Law 2010 ADAAG § 604.8.1.2.

**FEDEX MEN'S RESTROOM**

ff.  In FedEx, the door force needed to open the men's restroom door is 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law

2010 ADAAG § 404.2.9.

gg.  In FedEx, the rear wall grab bar in the men's restroom only extends 10 inches and 26 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.

hh.  In FedEx, the paper towel dispenser in the men's restroom is 53  inches above the finished floor and outside the reach range of an individual in a wheelchair of a minimum of 15 inches (380 mm) and a maximum of 48 inches (1220 mm), in violation of Federal Law 2010 ADAAG § 308.2.1.

### PANERA BREAD WOMEN'S RESTROOM

ii.  In Panera Bread, the force needed to open the women's restroom door is 7 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

jj.  In Panera Bread, the women's restroom does not have the signage and international symbol of accessibility, in violation of Federal Law 2010 ADAAG § 703.7.2.1.

kk.  In Panera Bread, the women's restroom door pull side maneuvering clearance in a front approach perpendicular to the doorway is 56.5 inches, which clearance is less than the minimum clearance of 60 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.

ll.  In Panera Bread, the women's restroom accessible stall door push side maneuvering clearance in a front approach beyond the latch and parallel to the doorway in a door with latch is 3 inches, which clearance is less than the minimum clearance of 12 inches, in violation of Federal Law 2010 ADAAG § 404.2.4.

mm.      In Panera Bread, the women's restroom accessible stall width is 56 inches, which width is less than the minimum required width of 60 inches of a wheelchair accessible compartment, in violation of Federal Law 2010 ADAAG §§ 604.8.1 and 304.3.

nn.  In Panera Bread, the rear grab wall in the women's restroom only extends 7 inches and 29 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.

oo.  In Panera Bread, the side wall grab bar in the women's restroom only extends 51 inches from the rear wall and does not extend the minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010 ADAAG § 604.5.1.

pp.  In Panera Bread, the toilet paper dispenser in the women's restroom is outside the reach range of an individual in a wheelchair, which dispenser centerline is 13.5 inches from the front of the water closet and not between 7 inches minimum and 9 inches maximum, in violation of Federal Law 2010 ADAAG § 604.7.

qq.  In Panera Bread, the bottom edge of the mirror's reflecting surface in the women's restroom is 47 inches above the finished floor, which height is higher than the maximum allowed height of 40 inches to permit an individual in a wheelchair to use the mirror, in violation of Federal Law 2010 ADAAG § 603.3.

rr.  In Panera Bread, the accessible water closet in the women's restroom does not have the flush control mounted on the one and wide side of the clear floor space, in violation of Federal Law 2010 ADAAG § 604.6.

ss.  In Panera Bread, the accessible toilet compartment door pull in the women's restroom is not provided on both sides of the door near the latch, in violation of Federal

Law 2010 ADAAG § 604.8.1.2.

tt.   In Panera Bread, the liquid soap dispenser in the women's restroom is mounted at 58 inches above the finished floor, which height is above the maximum allowed reach height of 48 inches (1220 mm), in violation of Federal Law 2010 ADAAG § 308.2.2.

**FEDEX WOMEN'S RESTROOM**

uu.   In FedEx, the force needed to open the women's restroom door is 8 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.

vv.   In FedEx, the women's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 12 inches and less than the required minimum clearance of 18 inches (blocked by a standing coat rack), in violation of Federal Law 2010 ADAAG § 404.2.4.

ww.      In FedEx, the toilet paper dispenser in the women's restroom is outside the reach range of an individual in a wheelchair, which dispenser centerline is 5 inches from the front of the water closet and not between the required 7 inches minimum and 9 inches maximum, in violation of Federal Law 2010 ADAAG § 604.7.

xx.   In FedEx, the paper towel dispenser in the women's restroom is 53 inches above the finished floor and outside the reach range of an individual in a wheelchair of a minimum of 15 inches (380 mm) and a maximum of 48 inches (1220 mm), in violation of Federal Law 2010 ADAAG § 308.2.1.

yy.   In FedEx, the bottom edge of the mirror's reflecting surface in the women's restroom is 44 inches above the finished floor, which height is higher than the maximum

allowed height of 40 inches above the finished floor to permit an individual in a wheelchair

to use the mirror, in violation of Federal Law 2010 ADAAG § 603.3.

zz.   In FedEx, the standing coat rack in the women's restroom is 57 inches above the

finished floor, which height is higher than the maximum allowed reach height of 48 inches

above the finished floor, in violation of Federal Law 2010 ADAAG § 603.4.

aaa.        In FedEx, the liquid soap dispenser in the women's restroom is mounted 52

inches above the floor and above the maximum allowed reach height of 48 inches (1220

mm), in violation of Federal Law 2010 ADAAG § 308.2.2.

14.     All of the foregoing violations are also violations of the 1991 Americans with

Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design,

as promulgated by the U.S. Department of Justice.

15.     The discriminatory violations described in paragraph 9 are not an exclusive list of

the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of

public accommodation in order to photograph and measure all of the discriminatory acts violating

the ADA and all of the barriers to access.  The individual Plaintiff, and all other individuals

similarly situated, have been denied access to, and have been denied the benefits of services,

programs and activities of the Defendant's buildings and its facilities, and have otherwise been

discriminated against and damaged by the Defendant because of the Defendant's ADA violations,

as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer

such discrimination, injury and damage without the immediate relief provided by the ADA as

requested herein.   In order to remedy this discriminatory situation, the Plaintiff requires an

inspection of the Defendant's place of public accommodation in order to determine all of the areas

of non-compliance with the Americans with Disabilities Act.

16.     Defendant has discriminated against the individual by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

17.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

18.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

19.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was

designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR

36.401, then the Defendant's facility must be readily accessible to and useable by individuals with

disabilities as defined by the ADA.

20.     Notice to Defendant is not required as a result of the Defendant's failure to cure the

violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and

gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or

waived by the Defendant.

21.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant

Plaintiff Injunctive Relief, including an order to require the Defendant to alter the College Metcalf

Plaza and adjacent parking lot spaces to make those facilities readily accessible and useable to the

Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility

until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the

commencement of the subject lawsuit the Defendant is in violation of Title III of the

Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily

achievable alterations to the facility; or to make such facility readily accessible to and

usable by individuals with disabilities to the extent required by the ADA; and to require

the Defendant to make reasonable modifications in policies, practices or procedures, when

such modifications are necessary to afford all offered goods, services, facilities, privileges,

advantages or accommodations to individuals with disabilities; and by failing to take such

steps that may be necessary to ensure that no individual with a disability is excluded, denied

services, segregated or otherwise treated differently than other individuals because of the

absence of auxiliary aids and services.

      c.     An award of attorney's fees, costs and litigation expenses pursuant to 42

U.S.C. § 12205.

      d.     Such other relief as the Court deems just and proper, and/or is allowable

under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*

15